UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) |
| | ) No. 25-cr-103-JJM-PAS |
| AMERICO URENA-JIMENEZ; and | ) |
| FAUSTO URENA-JIMENEZ, | ) |
|     Defendants. | ) |
| | ) |

MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Court Chief Judge.

Before the Court is a Motion to Suppress filed by both Defendants, Americo Urena-Jimenez and Fausto Urena-Jimenez ("Defendants").  ECF No. 24.  Defendants move to suppress all items and information seized, gained, and obtained by the Government on the date of their arrest.  *Id.* at 1.  Defendants assert that evidence seized on the date of their arrest is inadmissible under the Fourth Amendment of the United States Constitution.  *Id.*  For the reasons below, the Court DENIES the Motion to Suppress.  *Id.*

I.    BACKGROUND

    A.    Relevant Facts

        1.    Investigation

Over several months leading to the arrests, members of the Drug Enforcement Agency Providence District office were investigating the Defendants for trafficking cocaine, fentanyl, and crystal methamphetamine.  ECF No. 1-1.

A confidential source ("CS") was in contact with the Government providing information in hopes that his participation would help his own legal situation as he is a self-admitted narcotics trafficker. *Id*. ¶ 5. The information provided to the Government by the CS consisted of details that the Defendants were driving to Providence, Rhode Island from New York to sell six pounds of crystal methamphetamine for a total price of $12,500 on August 25, 2025, at about 9:20p.m. *Id*. ¶¶ 8-9. The information also consisted of the car the Defendants would allegedly be in which was a silver Acura SUV bearing NY registration XXXX653, and the place the sale was allegedly taking place, which was said to be Detroit Avenue in Providence, Rhode Island. *Id*.

### 2.    Arrest

Federal agents set up surveillance where the sale was alleged to take place in Detroit Avenue. *Id*. ¶ 10. At about 9:25p.m. on August 25, 2025, law enforcement saw a silver Acura matching the description that aligned with information provided by the CS. *Id*. Once the car parked, federal agents detained the Defendants. *Id*. ¶ 11. The Defendants were allegedly also attempting to flee when this occurred but were unable to. *Id*. Mr. Fausto stated to law enforcement that they were only there to collect money and did not bring anything with them. *Id*. ¶ 12. Agents then used a K-9 dog to conduct an exterior scan of the Acura, who alerted his handler of the presence of narcotics. *Id*. ¶¶ 13-14. Agents then searched the vehicle, and a quantity of suspected crystal methamphetamine was found concealed within a void under the hood, near the firewall between the engine block and passenger compartment. *Id*.

After the search, Mr. Fausto was provided with his Miranda rights, which he waived voluntarily; he signed a Miranda waiver form and agreed to speak with law enforcement.  *Id.* ¶ 17.

### B.    Procedural History

A federal criminal complaint was filed on August 26, 2025.  ECF No. 1.  Arrest warrants were issued charging Defendants with Conspiracy to Distribute 500 Grams or More of Methamphetamine.  ECF No. 2.  On September 17, 2025, a federal grand jury returned a single-count indictment charging Defendants with the same offense. ECF No. 11.  Subsequently, Defendants moved to suppress evidence, (ECF No. 24), which the Government opposed.  ECF No. 30.

## II.    APPLICABLE LAW

### A.  The Fourth Amendment

The Fourth Amendment ensures a person's right to be "secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.  When an automobile is stopped and its occupants are detained; it is defined as a seizure under the Fourth Amendment.  *Whren v. United States*, 517 U.S. 806, 809-10 (1996); *Delaware v. Prouse*, 440 U.S. 648, 653 (1979).  To meet the "reasonable" requirement that all such seizures must meet under the Fourth Amendment, U.S. Const. amend. IV, police officers who are conducting the investigatory stop must have "reasonable suspicion" and "must be able to point to specific and articulable facts which, taken together with rational inferences from

3

those facts," to justify an intrusion on a private person. *Terry v. Ohio*, 392 U.S. 1, 21 (1968).

The exclusionary rule makes the Fourth Amendment enforceable by prohibiting the fruits of an unreasonable search or seizure from being admitted at trial. *See United States v. Camacho*, 661 F.3d 718, 724 (1st Cir. 2011). When a defendant moves to suppress evidence under the Fourth Amendment, they have the burden of showing his Fourth Amendment rights were violated. *United States v. Rheault*, 561 F.3d 55, 58-59 (1st Cir. 2009).

### B. Investigatory Stop (*Terry* Stop)

When a law enforcement agent has a reasonable suspicion that an individual(s) is engaged in criminal activity, he is "permitted to make a brief investigatory stop, commonly known as a *Terry* stop." *United States v. Rabbia*, 699 F.3d 85, 89–90 (1st Cir. 2012). The First Circuit has adopted a two-step analysis for "determin[ing] whether a brief investigatory stop—a *Terry* stop—passes constitutional muster." *United States v. Carmona*, 103 F.4th 83, 90 (1st Cir. 2024). At step-one, the court must "ascertain whether the officer possessed 'reasonable, articulable suspicion of an individual's involvement in some criminal activity.'" *Id.* Once the court finds step-one is met, step-two requires that "actions undertaken pursuant to that stop [were] reasonably related in scope to the stop itself unless the [officer had] a basis for expanding [his] investigation." *Id.* At each step, the inquiry requires the court to consider "the totality of the surrounding circumstances" before reaching a "practical, commonsense determination" of the validity of law enforcement's actions. *United*

4

*States v. Ruidíaz*, 529 F.3d 25, 29 (1st Cir. 2008). Reasonable suspicion can be established by an informant's tip if the tip possesses sufficient "indicia of reliability." *United States v. Sanchez*, 817 F.3d 38, 42 (1st Cir. 2016)

## III.  DISCUSSION

### A. Standing

The Government challenges Defendants' standing to seek suppression of the evidence. ECF No. 30, at 13. In this case, Mr. Americo was the passenger, and Mr. Fausto was the driver of the borrowed Acura. ECF No. 1-1 ¶ 11. Although neither Defendant owned the vehicle (*id.* ¶ 8), both may nevertheless challenge the constitutionality of the traffic stop under the Fourth Amendment. *See* ECF No. 24. As the First Circuit has recognized, passengers, like drivers, are seized during a traffic stop and therefore have standing to contest its legality, even absent a possessory interest in the vehicle. *See United States v. Campbell*, 741 F.3d 251, 260 (1st Cir. 2013) (holding that although the defendants had no possessory interest in the vehicle, they were seized "as passengers in the stopped automobile" for Fourth Amendment purposes and could challenge the validity of the stop).

### B. Investigatory Stop

Defendants argue that Government agents stopped, detained, and arrested them without probable cause or reasonable suspicion, in violation of the Fourth Amendment. ECF No. 24 at 1. According to Defendants, the agents' initial encounter constituted an unlawful de facto arrest rather than a permissible investigatory stop. *Id.* at 7. The Government responds that the initial encounter was a lawful *Terry* stop

supported by reasonable, articulable suspicion. ECF No. 30 at 10. It further contends that, when viewed under the totality of the circumstances, the information from the CS, together with the agents' independent observations, justified the brief detention to investigate suspected drug trafficking. *Id.* The Government also argues that the use of handcuffs was reasonable because the agents were confronted with an inherently dangerous situation and acted to ensure officer safety. *Id.* at 9.

The Court agrees with the Government. Under the totality of the circumstances, the agents possessed reasonable and articulable suspicion that Defendants were engaged in drug trafficking. *See Carmona*, 103 F.4th at 90. Specifically, the record establishes that: (1) a CS with a demonstrated history of reliability informed law enforcement that a silver Acura bearing registration XXXX653 would arrive on Detroit Avenue at about 9:20 p.m. with both Defendants inside; (2) shortly after the vehicle arrived, the CS immediately notified agents that Defendants had reached the meeting location, thereby independently confirming the tip; (3) relying on the CS's firsthand knowledge of Defendants' narcotics activities and methods of operation, agents positioned their vehicles in front of and behind the Acura, observed the vehicle attempt to flee, and approached the vehicle to remove its occupants; and (4) Defendants were handcuffed while officers secured the scene and continued their investigation. ECF No. 1-1 ¶ 5-11.

The Court further concludes that the agents' actions were reasonably related in scope to the investigatory stop. *See Carmona*, 103 F.4th at 90. The temporary use of handcuffs did not convert the detention into a de facto arrest. As the First Circuit

6

has explained, "Neither the use of handcuffs nor the drawing of a weapon necessarily transforms a valid *Terry* stop into a de facto arrest." *United States v. Rasberry*, 882 F.3d 241, 248 (1st Cir. 2018). Given the nature of the suspected offense and the uncertainty surrounding whether Defendants were armed, it was objectively reasonable for the agents to conclude that the encounter presented an inherent risk to officer safety. ECF No. 30 at 9.

The Court is likewise unpersuaded by Defendants' argument that the CS's information lacked independent corroboration because agents did not memorialize the corroborating facts in writing before intercepting the suspected drug transaction. ECF No. 24 at 4-5. An informant's reliability is strengthened when the informant provides information demonstrating firsthand knowledge of the criminal activity at issue. *United States v. Brown*, 500 F.3d 48, 55 (1st Cir. 2007). Here, the CS provided information containing many details consisting of the time, location, vehicle, and the registration of the vehicle. ECF No. 1-1 ¶ 8. The CS contacted law enforcement immediately after Defendants arrived at the designated meeting location, corroborating the predicted timing and location of the encounter in real time. *Id.*¶ 9. As the Government pointed out, the Defendants cite no authority requiring that corroborating observations be reduced to writing before officers may rely on them in forming reasonable suspicion.

Thus, considering the totality of the circumstances, the Court concludes that the CS was sufficiently reliable, giving the agents reasonable suspicion to believe that

7

illegal activity was taking place when they approached the Acura.  Accordingly, the Court finds that they properly conducted a *Terry* stop.  *Carmona*, 103 F.4th at 90.

## C.  Search of the Vehicle

Defendants challenge the warrantless use of a K-9 dog to conduct an exterior sniff of the Acura, arguing that it violated the Fourth Amendment and that all evidence subsequently obtained must therefore be suppressed as fruit of the poisonous tree.  ECF No. 24 at 5.  The Government responds that a K-9 dog's positive alert established probable cause to search the vehicle under the automobile exception to the warrant requirement.  ECF No. 30 at 12.

The Supreme Court has held that "a dog sniff conducted during a lawful traffic stop does not violate the Fourth Amendment's proscription of unreasonable seizures." *Rodriguez v. United States*, 575 U.S. 348, 350 (2015) (citing *Illinois v. Caballes*, 543 U.S. 405 (2005)).  However, "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." *Rodriguez*, 575 U.S. at 350.  Accordingly, a canine sniff is constitutionally permissible only if it does not prolong the stop absent independent reasonable suspicion.  *Id.* at 350-51.

Here, agents removed the Defendants from the Acura, and a K-9 dog *immediately* conducted an exterior sniff of the vehicle while a Task Force Officer interviewed Mr. Fausto.  ECF No. 1-1 ¶ 13.  The Government asserts that a K-9 dog alerted the presence of narcotics, after which officers searched the vehicle and discovered a concealed compartment in the firewall separating the engine

compartment from the passenger cabin.  ECF No. 30 at 5.  Inside the compartment, law enforcement recovered two black trash bags containing about 2,700 grams of methamphetamine.  *Id.*

The automobile exception permits officers to conduct a warrantless search of a vehicle and any containers within it when they have probable cause to believe the vehicle contains contraband or evidence of a crime.  *United States v. Hernandez Rodriguez*, 150 F.4th 10, 14 (1st Cir. 2025).  The Government argues that probable cause arose from the CS's information, the agents' corroboration of the vehicle and its occupants, and a K-9 dog's positive alert.  ECF No. 30 at 15.  Based on those facts and the above discussion the Court concludes that probable cause existed and that the warrantless search of the Acura was lawful.

### D. Mr. Fausto's Statements

Defendants move to suppress all "statements that flow from the initial constitutional violation."  ECF No. 24 at 5-6.  Although Defendants do not identify the specific statements they seek to suppress, the parties' submissions indicate that the motion concerns two statements made by Mr. Fausto.  *Id.*

The first ("Statement One") consists of Mr. Fausto's statement that he and Mr. Americo traveled to Rhode Island to collect money and that they did not bring anything with them.  ECF No. 1-1 ¶ 12.  The second ("Statement Two") consists of Mr. Fausto's admission that he placed the two black trash bags under the hood of the Acura, while claiming that he did not know their contents.  *Id.* ¶ 17.

The Government states that it does not intend to introduce Statement One at trial. ECF No. 30 at 17. Therefore, Defendants' Motion to Suppress Statement One is DENIED as moot. The Court therefore limits its analysis to Statement Two.

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. To safeguard this constitutional protection, law enforcement officers must advise a suspect of the rights recognized in *Miranda v. Arizona* before conducting a custodial interrogation. *See United States v. Jackson*, 544 F.3d 351, 356 (1st Cir. 2008) (citing *Miranda v. Arizona*, 384 U.S. 436, 479 (1966)). Even when Miranda warnings are administered, any resulting statements must be suppressed if the defendant did not knowingly, intelligently, and voluntarily waive those rights. *See Yeboah-Sefah v. Ficco*, 556 F.3d 53, 81 (1st Cir. 2009).

To admit Statement Two, the Government bears the burden of proving by a preponderance of the evidence that Mr. Fausto knowingly, intelligently, and voluntarily waived his Miranda rights. *See Colorado v. Connelly*, 479 U.S. 157, 168, 175 (1986); *United States v. Monroe*, 264 F. Supp. 3d 376, 384 (D.R.I. 2017). Although a signed Miranda waiver form is not dispositive, the Supreme Court has recognized that it ordinarily constitutes "strong proof" that a valid waiver occurred. *North Carolina v. Butler*, 441 U.S. 369, 373 (1979). Whether a waiver is valid depends on the totality of the circumstances, including the defendant's experience, background, and conduct. *Id.* at 374-75.

10

Here, before questioning, agents advised Mr. Fausto of his Miranda rights and presented him with a written Miranda waiver form, which he reviewed and signed. ECF No. 1-1 ¶ 17; ECF No. 30-3.  After executing the waiver, Mr. Fausto agreed to speak with law enforcement officers.  ECF No. 1-1 ¶ 17; ECF No. 30 at 5.  A Task Force Officer and a Special Agent then interviewed Mr. Fausto in Spanish, his native language, during which he made the admissions constituting Statement Two.  *Id.* There is no evidence that Mr. Fausto was unable to understand his rights, that he was coerced into waiving them, or that his waiver was otherwise involuntary.  Under these circumstances, the Government has established by a preponderance of the evidence that Mr. Fausto's waiver of his Miranda rights was made knowingly, intelligently, and voluntarily.  *See Connelly*, 479 U.S. at 168, 175; *Monroe*, 264 F. Supp. 3d at 384.

Thus, Defendants' Motion to Suppress is DENIED as to Statement Two.

## IV.    CONCLUSION

For the reason set forth above, the Court DENIES Defendants' Motion to Suppress.  ECF No. 24.

11

IT IS SO ORDERED.


*s/John J. McConnell, Jr.*

_____

John J. McConnell, Jr.
Chief Judge
United States District Court


July 9, 2026

12